CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
AUG 06 2013
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JACOB DOUGLAS PEYTON, IV, | ) | CASE NO. 7:12CV00574 |
| Petitioner, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| HAROLD CLARK, DIRECTOR, | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Respondent. | ) | |

Jacob Douglas Peyton, IV, a Virginia inmate proceeding pro se, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his confinement for convictions related to break-ins at three different businesses in Augusta County in July 2006. Upon review of the record, the court concludes that the respondent's motion to dismiss must be granted.

I

Peyton was tried in a bench trial on May 22, 2008, in the Circuit Court of Augusta County, Virginia, on three counts of breaking and entering and three counts of grand larceny. (CR07000465(00-05)). At trial, the jury heard the following evidence, presented in the light most favorable to the Commonwealth.

Lynn Sprouse, the manager of the Afton Mountain Convenience Store, testified that someone broke into the store on July 22, 2006, by throwing a rock through the front door, breaking the glass. Sprouse testified that the next day, the cash register was on the floor, broken open, and she discovered several items missing: Marlboro, Marlboro Light, Newport, and Newport 100 cigarettes, lighters, and two gold dollars, totaling more than $200 in value.

Tomas Scotto-Lavina, owner of Scotto's on the Green, testified that someone broke into his business on July 19, 2006, by forcing open the back door. Items missing after the break-in included about $100 in cash from the register, plus sodas and candy, for a total loss of between $200 and $300. Claros A. Argueta testified that someone broke out a side glass door of his store, Brothers Pizza, on July 19, 2006, and stole dollar bills, rolls of coins, and tools, with a total value of more than $200.

Augusta County Sheriff's Office investigator A.C. Powers testified that Peyton's codefendant, Kevin Welcher, led Powers to a field and wooded area, where they found trash bags containing a large number of cigarettes.[1] Powers stated that authorities had not recovered any of the other property missing from the three stores.

Welcher testified that on July 22, 2006, he drove Peyton to the convenience store, where they knocked out a window and stole some cigarettes. Welcher stated that he and Peyton hid some of these stolen cigarettes on the farm where he later took Powers. Welcher admitted that he did not know whether the cigarettes Powers found on the farm were from the Afton Mountain store or from another place where he and Peyton had stolen cigarettes in another jurisdiction.[2]

At Scotto's on the Green, Welcher said, he and Peyton used a screwdriver to pry a door open, and once inside, they took cash and snacks. Welcher stated that he and Peyton broke a sliding glass door at Brothers Pizza, where they took a drill and rolls of change In exchange for his promise to testify truthfully against Peyton, Welcher received a suspended 16-year sentence on his charges stemming from the incidents.

---

[1] A photograph of the recovered cigarettes did not show any items of the Marlboro and Newport brands.

[2] Welcher also testified against Peyton in a trial on similar charges in that jurisdiction.

In his own defense, Peyton testified that he had not been involved in any of the three break-ins. On cross-examination, he admitted that he had been convicted of more than one felony.

The judge found Peyton guilty of all six charges and sentenced him to six concurrent sentences of seven years and six months in prison. Peyton appealed, arguing that the evidence was insufficient to support his convictions. The Court of Appeals of Virginia refused his petition on May 20, 2009 (Record No. 2832-08-2). The Supreme Court of Virginia granted Peyton's motion for a delayed appeal under Virginia Code § 19.2-321.2, based on his attorney's supporting affidavit, but later issued a one-paragraph order on March 23, 2010, refusing the appeal (Record No. 092045).

Peyton then filed a petition for a writ of habeas corpus in the Circuit Court of Augusta County. The Court addressed Peyton's petition in a letter opinion dated September 20, 2011, citing reasons that the petition would be dismissed; one month later, the Court entered orders dismissing the petition and denying Peyton's motion for reconsideration (CR07000465 (00-05)). Peyton sought review in the Supreme Court of Virginia, which refused his habeas corpus appeal on July 6, 2012, in a one-paragraph order, finding no reversible error in the Circuit Court's judgment (Record No. 120141).

Liberally construed, Peyton's timely filed § 2254 petition alleges the following grounds for relief:

1. trial counsel provided effective assistance by failing to conduct an independent pre-trial investigation;

2. trial counsel provided effective assistance by failing to prepare a defense or present exculpatory evidence;

3. appellate counsel provided effective assistance by failing to perfect an appeal;

3

4. trial counsel provided effective assistance by failing to object to the Commonwealth's use of perjured testimony; and

5. petitioner was denied a fair trial before an impartial judge.

The respondent has filed a motion to dismiss, and Peyton has responded, making the matter ripe for disposition.

II

Standards of Review

Principles of comity dictate that the state be given the first opportunity to correct constitutional errors in criminal proceedings. See Ex parte Royall, 117 U.S. 241, 251-53 (1886). Absent a valid excuse, a state prisoner petitioner "must have fairly presented to the state courts the substance of his federal habeas corpus claim." Anderson v. Harless, 459 U.S. 4, 6 (1982) (internal quotations omitted). "A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)). Such a claim is also procedurally barred from federal habeas review, however. Gray, 518 U.S. at 162. A federal habeas court may review the merits of a procedurally defaulted claim only if petitioner demonstrates cause for the default and resulting prejudice or makes a colorable showing of actual innocence. Breard, 134 F.3d at 620.

When a state court has ruled on the merits of petitioner's habeas claims, under 28 U.S.C. § 2254(d), a federal habeas court must give deference to state court's rulings. The federal court may grant habeas relief on such claims only if the state courts' adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the

4

facts in light of the evidence presented in the State court proceeding." 28 U.S.C § 2254(d); see also Williams v. Taylor, 529 U.S. 362, 403-13 (2000). "Where, as here, it is the state court's application of governing federal law that is challenged, the decision must be shown to be not only erroneous, but objectively unreasonable." Waddington v. Sarausad, 555 U.S. 179, 190 (2009) (internal quotations and citations omitted). More specifically, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S.__, __, 131 S. Ct. 770, 786 (2011) (omitting internal quotations). The habeas petitioner carries the burden of proof by a preponderance of the evidence. Cullen v. Pinholster, __ U.S.__, 131 S. Ct. 1388,1398 (2011).

Federal habeas review under § 2254(d) is limited "to the record that was before the state court that adjudicated the claim on the merits." Id. The federal court is precluded from supplementing the record with facts presented for the first time during the federal habeas proceeding. Id. at 1399 ("It would be strange to ask federal courts to analyze whether a state courts' adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court."). The federal court's review under § 2254(d)(1) must focus on "what a state court knew and did" and measure state court decisions against Supreme Court precedent "as of the time the state court render[ed] its decision." Id. at 1399 (internal quotations omitted).

## Procedurally Defaulted Facts and Claims

The Circuit Court of Augusta County construed Peyton's habeas petition as raising the following allegations of ineffective assistance: (a) counsel conducted no pretrial discovery and did not request a bill of particulars; (b) counsel failed to file a motion to suppress or to object to unlawfully obtained evidence; (c) counsel failed to move for dismissal of the charges under the

5

Agreement on Interstate Detainers ("the IAD"); (d) counsel and petitioner did not agree on the conduct of the case. The state court addressed each of these claims and found that petitioner had failed to establish ineffective assistance under Strickland.[3]

The parties agree that Peyton has renewed in Claims 1 and 2 of his federal habeas petition the four ineffective assistance claims raised in his state petition. As to these four claims and Peyton's supporting facts offered in the state petition, Peyton has exhausted state court remedies, making these claims reviewable in these federal habeas proceedings under § 2254(d) on the merits.

In the federal petition, however, Peyton adds numerous additional facts and contentions about counsel's pretrial investigation and presentation of evidence at trial that were not presented in his state habeas petition.[4] Peyton asserts that these new allegations and arguments are merely enlarging upon claims adjudicated by the state habeas court, rather than raising new claims for

---

[3] Because the Supreme Court of Virginia dismissed Peyton's habeas appeal in a summary order, this court must review the Circuit Court's adjudication of Peyton's claims and presume that the Supreme Court of Virginia resolved his claims in the same manner. See Ylst v. Nunnemaker, 501 U.S. 797, 801-02 (1991).

[4] In Claim 1 of his federal habeas petition, Peyton alleges that counsel failed to (1.a) move for production of discovery and exculpatory evidence related to the events of July 23, 2006 at Afton Mountain Convenience Store and thus failed to obtain sheriff's reports, witness statements, crime scene photos, inventory of recovered stolen property, and photos of the recovery scene, which might have showed the time and manner of the entry and the identity of the perpetrator; (1.b) obtain a tape of the 911 call on July 22, 2006, which could have been used to exclude the store manager's testimony, since she did not discover or report the crime; (1.c) request or review business records to verify the nature and value of the stolen property; (1.d) obtain court documents or interview a list of potential witnesses to verify that it was unlawful; (1.e) obtain copies of police crime scene photos, which might have raised questions about how the crime was committed; (1.f) obtain copies of police search scene photos, to prove where and what stolen property was recovered; (1.g) obtain forensic evidence establishing petitioner's presence at the crime scene, such as fingerprints or DNA; (1.h) obtain police reports, witness statement, alarm report, or security tape demonstrating the time the crime was committed; (1.i) investigate the criminal records of the state's witness, to impeach credibility; and (1.j) investigate complaints against the police department and its officers for fabricating evidence or conducting unlawful searches and seizures.
In Claim 2 of the federal petition, Peyton faults counsel for failing to (2.a) research law concepts; (2.b) review indictments; (2.c) review the investigation and call fact witnesses; (2.d) review facts supporting a double jeopardy claim; and (2.e) prepare a trial strategy.

6

relief. It is well established under Cullen, however, that this court, in resolving Peyton's federal claims, can consider only information that was also presented to the state habeas court.[5] 131 S. Ct. at 1399. Therefore, Peyton's newly asserted allegations in support of his claims about counsel's ineffectiveness during the investigation and trial are procedurally barred from federal review.

Peyton did not present to the state court his current Claim 3, asserting ineffective assistance by appellate counsel,[6] or Claim 4, asserting that counsel failed to object to the use of perjured testimony. Peyton did allege in his state petition that the Commonwealth had knowingly presented perjured testimony, but he did not state a claim before the state court that his own counsel was ineffective in this regard. Accordingly, Claims 3 and 4 are unexhausted. If Peyton now returned to state court with these habeas claims, the state court would dismiss them under Va. Code Ann. § 8.01-654(B)(2), because Peyton knew the facts in support of the claims at the time he filed his first state habeas petition.[7] Because the claims would now be procedurally barred from state review, they are also procedurally barred from review in federal court, absent a

---

[5] Peyton asserts that the information newly raised in his federal petition on the adjudicated claims may be considered, as it was in the Williams case. 529 U.S. 420. In Cullen, however, the Supreme Court rejected this argument, finding that Williams was distinguishable; the claims on which Williams sought a hearing under § 2254(e)(2) had not been adjudicated by the state court and, as to some of these claims, Williams showed that he could not have developed the facts of his claims earlier with due diligence. Cullen, 131 S. Ct. at 1399-1400 (citing Williams 519 U.S. at 444). Peyton has not demonstrated any reason that he could not have presented all of his facts to the state habeas court.

[6] Peyton also fails to state facts demonstrating that, absent counsel's alleged omissions, the outcome of the appeal would have been different. See United States v. Baker, No.12-6624, __F.3d__, 2013 WL 2631726, at *4 (4th Cir. 2013) ("Appellate counsel . . . enjoys a presumption that he decided which issues were most likely to afford relief on appeal, a presumption that a defendant can rebut only when ignored issues are clearly stronger than those presented.) (internal quotations omitted); Jones v. Barnes, 463 U.S. 745 (1983) (finding that counsel has no constitutional duty to raise every nonfrivolous claim on appeal).

[7] The Fourth Circuit has recognized the successive petition provision in § 8.01-654(B)(2) as an adequate and independent state law ground barring federal habeas review. See, e.g., Pope v. Netherland, 113 F.3d 1364, 1372 (4th Cir. 1997); Gray v. Netherland, 99 F.3d 158, 163 (4th Cir. 1996).

showing of cause and prejudice, or actual innocence, neither of which Peyton has made. Gray, 518 U.S. at 162.

For the stated reasons, the court finds that any iterations of Peyton's federal Claims 1 and 2 which were not raised in the state petition, as well as Claims 3 and 4, must be dismissed as procedurally barred. Excepted from this procedural bar are the four, renewed state habeas claims and the supporting facts adjudicated in the state petition, which this court must address under § 2254(d).

The court also finds that Peyton raised his federal Claim 5 in his state petition—he alleged that the trial judge showed bias when he refused to appoint Peyton new counsel. The Circuit Court addressed this set of allegations on the merits. Therefore, the court rejects respondent's assertion of procedural default and will address Claim 5 on the merits under § 2254(d). To the extent that Peyton asserts additional ways in which the trial judge allegedly demonstrated bias during trial proceedings, however, these newly raised allegations are procedurally barred from federal habeas review under Cullen, because he did not give the state court an opportunity to consider them. 131 S. Ct. at 1399.

### Alleged Ineffective Assistance

To state a constitutional claim for ineffective assistance, petitioner must satisfy a two-prong test by showing (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 686-87 (1984). Petitioner must overcome "a strong presumption" that counsel's performance was reasonably competent, and the court may adjudge counsel's performance deficient only when petitioner demonstrates that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 689-90.

8

Even if petitioner can establish deficient performance under this high standard, relief remains unavailable unless he also shows a "reasonable probability" that, but for counsel's specified error, the outcome of the proceeding would have been different. Id. at 694-95. The court must deny relief if petitioner fails to establish either of the Strickland prongs. Id. at 697.

The first claim of ineffective assistance that Peyton presented to the Circuit Court alleged that counsel was ineffective for failing to file motions for discovery and a bill of particulars. The Circuit Court noted that according to trial counsel's affidavit, he had complete access to the Commonwealth's file in Peyton's case and interviewed the case investigator, which Peyton does not dispute even now.[8] The Court found that Peyton had failed to allege any additional materials favorable to the defense that counsel could have obtained through a motion for discovery and that he failed to state any objectionable defect in the indictment, requiring a bill of particulars. Based on this evidentiary deficiency, the state court held that Peyton failed to show prejudice under Strickland arising from counsel's failure to file motions for discovery or a bill of particulars.

This court cannot find that the state courts' adjudication of this claim was unreasonable. Welcher testified that he and Peyton broke into the business and stole the property that the owners found missing, demonstrating a knowledge of details about the break-ins that only a participant would have possessed. The trial court found Welcher's testimony to be credible and

---

[8] Although the Circuit Court made no express finding that counsel's actions were not deficient, the Court implied such a conclusion. As noted by the Circuit Court, under the Strickland standard,
> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

466 U.S. 690-91. With access to all materials in the prosecution's file, this court cannot find that counsel acted unreasonably in failing to file a discovery motion seeking additional materials, unidentified in the state court petition.

9

did not believe Peyton's denials of involvement in the break-ins and thefts. Peyton did not present the state court with any particular piece of information which counsel failed to uncover through discovery that would have significantly discredited Welcher or bolstered Peyton's defense of denying involvement. Even considering all the materials Peyton listed in his federal petition that counsel allegedly might have obtained through discovery, Peyton fails to demonstrate any reasonable probability that review or presentation of such materials would have resulted in a different outcome at trial. At the most, Peyton speculates that counsel might have discovered video footage of someone else committing the crimes or found evidence that police unlawfully seized the cigarettes without a warrant. Such speculation is not sufficient to show any reasonable likelihood that presentation of the omitted motions would have resulted in a different outcome as required under the established federal standard in <u>Strickland</u>. Thus, the court must grant the motion to dismiss under § 2254(d) as to this claim.

Peyton's second ineffective assistance claim presented to the Circuit Court alleged that counsel should have moved to suppress evidence of the cigarettes found in the woods or should have objected to admission of this evidence. Peyton asserted that members of his family owned the property where these items were found, and police entered the property and seized the cigarettes without a search warrant. Based on his family's interest in the property and his own unspecified "control over" the property, Peyton claimed that he had an expectation of privacy in the premises searched.

The Circuit Court noted that Peyton presented no evidence with this <u>habeas</u> claim on which he could establish that the area searched belonged to his family or that Peyton himself had any type of control over it. Therefore, the Court found that Peyton had not proven standing to challenge the reasonableness of the search or to exclude the evidence about the cigarettes. <u>See</u>

10

Alderman v. United States, 394 U.S. 165, 174 (1969) (finding that person aggrieved by illegal search of third person's premises has not been deprived of Fourth Amendment rights). The Circuit Court also noted that even without recovery of the property stolen, a defendant could be convicted of larceny based on credible testimony by his codefendant. Ruling that the proffered Fourth Amendment challenge to the cigarette evidence had no merit and that the challenged evidence was not necessary to support the conviction, the Circuit Court denied relief on this claim under both prongs of Strickland. See 466 U.S. at 694 (finding that, to prove deficient performance and prejudice, petitioner must prove merit of constitutional claim he faults counsel for omitting).

The court cannot find this disposition of Peyton's second state habeas claim to be unreasonable under § 2254(d). Peyton did not prove to the state court that he had any legal interest in the property searched to support his invocation of Fourth Amendment protections.[9] See Rakas v. Illinois, 439 U.S. 128, 130 (1978) (finding individual can challenge constitutionality of search and seizure only if he/she had reasonable expectation of privacy in the place searched or the object seized). Counsel cannot be deficient for failing to bring a suppression motion or objection that had no legal or factual basis. Moreover, counsel used discussion of the cigarette evidence in an attempt to discredit Welcher's testimony, based on the fact that the brands of cigarettes discovered in the woods did not match the brands stolen from the convenience store in this case. The court cannot find this strategic choice unreasonable, as

---

[9] Peyton asserted in his state petition that the property, described as 979 Cold Springs Road, Stuart's Draft, belonged to his mother and her siblings and was listed on Peyton's presentence report as his permanent address. Other evidence before the state habeas court indicated, however, that Peyton resided in an apartment in Winchester. Even in this § 2254 action, Peyton provides no documentation demonstrating that he physically resided at or had any legal ownership interest in the property on which police found stolen cigarettes. At the most, Peyton attaches to his pleadings copies of unauthenticated and undated transcript pages, reflecting that witnesses or court participants, at various times, referred to the property as belonging to Peyton's relatives. He also claims that various family members would have testified that they owned or resided on the property.

Welcher's testimony alone sufficed to support the conviction, if the fact finder found it credible. See United States v. Wilson, 115 F.3d 1185, 1190 (4th Cir. 1997) ("[T]he uncorroborated testimony of one witness or of an accomplice may be sufficient to sustain a conviction"). For these reasons, Peyton's claim that counsel was ineffective for failing to bring a suppression motion fails under Strickland. Because the state courts' adjudication of this claim was not contrary to or an unreasonable application of Strickland and was not based on an unreasonable determination of facts, this court grants the motion to dismiss under § 2254(d) as to this claim.

The third ineffective assistance claim Peyton presented in state habeas proceedings alleged that counsel was ineffective for failing to move for dismissal of all the charges under the IAD, Virginia Code Ann. § 53.1-210, et seq. The state court rejected this claim under both prongs of Strickland. The Court noted that in December 2007, counsel filed a motion to dismiss all the warrants against Peyton with prejudice under the IAD, because Peyton was not tried on the charges within 180 days after a Virginia detainer was lodged with Ohio authorities.[10] The motion was denied because the IAD does not apply to arrest warrants. Two other charges on which Virginia authorities indicted Peyton in July 2007 were dismissed under the IAD.[11] As to the six charges under challenge here, Peyton was indicted on January 28, 2008, and his trial in May 2008 was within the IAD time limits, rendering frivolous any additional motion to dismiss under the IAD.

---

[10] The record reflects that the Augusta County Sheriff's Office swore out six felony warrants against Peyton on August 3, 2006. Ohio authorities arrested Peyton on September 22, 2006. Peyton waived extradition to Virginia and requested trial on the pending charges in January and February 2007. He was served with the Augusta County warrants in September 2007.

[11] See Locklear v. Commonwealth, 376 S.E.2d 793, 795 (Va. App. 1989) (holding that "the [IAD] was intended to apply only to instruments such as indictments, informations or complaints upon which the detainee could be tried immediately upon his return. This definition does not include a felony warrant of arrest. . . .").

12

In his federal petition, Peyton offers no factual or legal ground on which counsel could successfully have moved for dismissal of these six charges under the IAD, nor has he shown any reasonable probability that absent counsel's asserted error, the outcome at trial would have been different. Accordingly, he fails to demonstrate that the state courts' adjudication of this claim was contrary to or an unreasonable application of Strickland or that it was based on an unreasonable determination of facts. Therefore, the court grants the motion to dismiss under § 2254(d) as to this claim.

Peyton's fourth state habeas claim of ineffective assistance asserted that he and his attorney did not agree about certain incidents of the trial. Specifically, Peyton complained that counsel failed to file motions for discovery, suppression of evidence, a bill of particulars, and dismissal of the charges under the IAD; that he and counsel disagreed about whether Peyton should accept a plea bargain; and that counsel was unprepared to defend Peyton at trial. For reasons already discussed, the state court found that the first four alleged disputes with counsel did not present claims under Strickland. The Court also found that counsel's advice in favor of the plea agreement was sound,[12] and that the plea bargain dispute did not result in any adverse impact on the competency of counsel's representation at trial. The Court expressly noted that counsel was an "effective advocate for Peyton." CL11000258, Opinion/Letter 7, Sept. 20, 2011. For these reasons, the state court found no deficient performance or prejudice, as required under Strickland, related to Peyton's strategic disagreements with counsel. Id.

The record supports the state court's findings that counsel advocated zealously for Peyton. The evidence indicates that counsel reviewed the Commonwealth's file, talked to the

---

[12] Peyton complained that the plea offer was for a sentence of seven years and eight months, more time than he received after trial. The habeas court pointed out that, according to trial counsel's affidavit, the rejected plea bargain would have allowed the Augusta County sentences to run concurrently with sentences imposed in another jurisdiction, giving Peyton less total time to serve.

13

investigating agent, explored and discussed with Peyton the option of a plea bargain, moved for dismissal of the charges (successfully, as to two counts not at issue here), questioned prosecution witnesses thoroughly, and presented an inherently consistent defense, based on Peyton's denial of participation. Counsel also argued in closing, as Peyton does in his petitions, that Welcher's plea bargain for no jail time in exchange for testifying gave him motivation to lie and that Welcher's unreliable testimony, as the only evidence tying Peyton to the offenses, was insufficient to support the conviction. The fact that counsel's efforts did not result in acquittal does not render his services ineffective, as the state court noted. Id. Because Peyton thus fails to demonstrate that the state courts' adjudication of this claim was contrary to or an unreasonable application of Strickland, or that it was based on an unreasonable determination of facts, the court grants the motion to dismiss under § 2254(d) as to this claim.

### Alleged Attorney Conflict and Judicial Bias

Peyton asserts in Claim 5 of the federal petition, as he did in the state petition, that the trial judge demonstrated bias by refusing to appoint new counsel, in violation of Peyton's due process right to a fair trial. Specifically, Peyton asserts that after he and his attorney had advised the judge about their disagreements over an offered plea agreement, the judge vouched for the attorney's legal expertise and proceeded with the trial. The state habeas court addressed these allegations about the trial judge as follows:

> Finally, the Court does not know exactly how to characterize Peyton's complaint that Judge Wood declined to appoint other counsel to replace [trial counsel]. The fact of the matter is that any review of the record indicates that [trial counsel] was an effective advocate for Peyton, and the fact that he did not do all that Peyton demanded, as indicated above, in no way renders his services ineffective. As to their not agreeing on all matters, the United States Supreme Court has . . . previously rejected "the claim that the Sixth Amendment guarantees a meaningful relationship between an accused and his counsel."

14

Opinion/Letter 7, Sept. 20, 2011 (quoting Morris v. Slappy, 461 U.S. 1, 14 (1983) (omitting internal quotations)).

In the federal petition, Peyton more clearly casts his complaint as a judicial bias claim, rather than an attorney conflict claim, as the state habeas court apparently read the allegations. Liberally construed, however, Peyton's state petition also presents a judicial bias claim. The fact that the state court did not cite or reason from Supreme Court precedent on judicial bias in dismissing the claim is not grounds for federal habeas relief. Harrington, 131 S. Ct. at 784 (noting that under § 2254(d) review, "a state court need not cite or even be aware of" controlling Supreme Court precedents). Under § 2254(d), this court may grant the writ on Peyton's judicial bias claim only if he demonstrates "that there is no possibility fairminded jurists could disagree that the state court's decision [to dismiss the claim] conflicts with [Supreme Court] precedents." Id. at 786. Peyton fails to meet this rigorous standard in the context of attorney conflicts or judicial bias. Moreover, even outside § 2254(d) restrictions, Peyton's claim fails on the merits in either of these contexts.

The relevant facts are the same in either context. Before trial on May 22, 2008, Peyton and his court-appointed trial counsel renewed a prior argument over Peyton's refusal to accept a plea bargain. In the courtroom, Peyton and the judge had the following exchange:

| | |
|---|---|
| Court: | [Defense counsel], you're ready to go. Mr. Peyton, is there something you want to say? |
| Peyton: | Yes, sir. . . . I'm not satisfied with this. I'm saying that there's things that I believe should have been done that haven't been done. My attorney and myself, you know, we—we don't get along, and he's . . . upset because I won't accept a plea, you know. He doesn't recognize that this is my life that we're talking about, not his. And we do not see eye to eye. I tried to tell you that last time I was here, and nothing has changed. |

15

| | |
|---|---|
| Court: | Well, I . . . told you you are free to hire a lawyer anytime you wanted one, didn't I? |
| Peyton: | Yeah. |
| Court: | Okay. And you haven't done that, have you? |
| Peyton: | No, sir. |
| Court: | So what are we going to do, Mr. Peyton? Just . . . |
| Peyton: | I'm not able to do that. |
| Court: | Well, what, do we just keep continuing this case, and continuing it, and continuing it and—forever? |
| Peyton: | No, I—I don't want to do that, Your Honor. |
| Court: | All right. |
| Peyton: | I—I really don't. But I want somebody that I believe is going rightfully, for what's right. |
| Court: | Okay. [Counsel], anything you want to say? |
| Counsel: | Your Honor, I don't—I don't have any . . . Mr. Peyton is correct that we don't get along. It's got nothing to do with me being prepared to go forward. |
| Court: | All right. |
| Counsel: | I've done everything he's asked me to do, Judge. |
| Court: | All right. I'm going to say this to Mr. Peyton, and put it on the record, we can't do a whole lot better than [counsel]. We just—we don't have any better. And neither does anybody else. He's experienced, and he's hard working, and he—I know he doesn't care anything but except for the best interests of his client. And you may not like it, Mr. Peyton, but I don't understand that—you being the legal expert, you won't take his advice, he's—he's going to do what you want him to do, and I don't know what else to do. We can't just stop this case and—and let you wait until you've gone through every lawyer in Staunton until you find one that you like. It just doesn't work that way. You're free to hire a lawyer, but you haven't done that because you can't do it. And we're giving you the best we've got. And we're going to go ahead with |

>it today and try it. And I'm going to note your objection to the
>ruling of the Court. It will be on the record.

Trial Tr. 6-7, May 22, 2008.

After the prosecutor waived any opening statement, the judge again questioned Peyton and his counsel:

| | |
|---|---|
| Court: | [Counsel], do you have all the witnesses—have you given him all—the names of all of your witnesses, Mr. Peyton? |
| Peyton: | Yes, I have. |
| Court: | All right, And are they here? |
| Counsel: | We've got one who we subpoenaed—he's in the room, Judge. |
| Court: | But he's here. |
| Counsel: | He's here. |
| Court: | All right. Are all the other witnesses that you want here . . .? |
| Counsel: | We just have the one, Judge. |

Id. at 8.

An attorney's conflicting obligations to interests other than those of his client do not necessarily violate the client's Sixth Amendment right to effective assistance of counsel. Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). As the state habeas court held, the Constitution does not guarantee that the defendant will have a "meaningful relationship" with his attorney. Morris, 461 U.S. at 14. To demonstrate a Sixth Amendment violation, petitioner must show that counsel had an actual conflict of interest that adversely affected the lawyer's performance on petitioner's behalf.[13] Id. at 349. Even where the trial court is somehow notified of a possible conflict of interest and fails to inquire into this conflict, petitioner must show that the conflict adversely

---

[13] A conflict of interest is also described as "a division of loyalties." Mickens v. Taylor, 535 U.S. 162, 172 n.5 (2002).

17

affected counsel's representation in a specific way. Mickens v. Taylor, 535 U.S. 162, 171-72 (2002). Where petitioner shows actual conflict and adverse effect, petitioner need not prove prejudice under Strickland. Id. at 172-73; Cuyler, 446 U.S. at 349-350.

At the most, Peyton's allegations and the record in the state habeas proceedings demonstrate that he did not agree with his attorney's advice about the plea bargain and other trial issues. Such different perspectives do not manifest the type of conflicting obligations at issue in Cuyler and Mickens. Peyton fails to make any showing that counsel's tactical decisions and legal advice were influenced adversely in any way by a specific, conflicting loyalty counsel bore toward the interests of any other person. Moreover, Peyton fails to demonstrate that his personal disagreements with counsel influenced the attorney to make choices adverse to Peyton's interests before or during trial. Thus, Peyton's submissions do not establish any conflict of interest that violated his Sixth Amendment right, based either on the alleged errors of counsel or the trial court.

The Due Process Clause "requires a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case," but creates a floor, not a uniform standard, against which to measure risks of bias. Bracy v. Gramley, 520 U.S. 899, 904-05 (1997). A petitioner need not prove that a judge was actually biased in order to establish a due process violation; rather, he must prove a "circumstance or relationship" that created an intolerable "probability of unfairness." In re Murchison, 349 U.S. 133, 136 (1955). Specifically, petitioner must establish an objective factor or factors, such as a judge's financial interest in the outcome of a proceeding or his past conflict or close relationship with a litigant, which is likely to "tempt[ an] adjudicator[ ] to disregard neutrality." Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 878 (2009). Thus, the habeas court's inquiry is "whether the average

judge in [the trial judge's] position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" Id. at 881 (internal quotations in original).

The record does not reflect that the trial judge's decision not to replace Peyton's attorney was based on any prior, personal conflict with Peyton or on any personal interest in the outcome of the trial so as to create any likelihood of judicial bias. Other than the plea agreement dispute, Peyton did not inform the trial judge of any particular action he had wanted counsel to take in preparation for trial that counsel failed to carry out. When the Court mentioned continuance, Peyton denied any desire to continue the trial to obtain new counsel and did not dispute counsel's statement that the one witness subpoenaed for trial was present. On these facts, the judge's commentary on defense counsel's professional expertise does not evince any judicial interest adverse to Peyton's, regarding the outcome of the proceeding.

For these reasons, Peyton fails to demonstrate that any conflicting interest or judicial bias deprived him of due process or a fair trial. Accordingly, Peyton also fails to show that the state courts' adjudication of this claim was contrary to, or an unreasonable application of federal law, or that it is based on an unreasonable determination of facts from the record. Therefore, his claim for federal habeas relief fails under § 2254(d). The court will grant the motion to dismiss as to Claim 5.

### III

For the reasons stated, the court grants the motion to dismiss. The Clerk is directed to send copies of this memorandum opinion and accompanying order to petitioner and to counsel of record for respondent.

ENTER: This 6th day of August, 2013.

_____
Chief United States District Judge